UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON


CIVIL ACTION NO. 2011-89 (WOB-CJS)

ELIZABETH A. OSBORN                                      PLAINTIFF

VS.

JOHN M. GRIFFIN, ET AL.                                  DEFENDANTS


and


CIVIL ACTION NO. 2013-32 (WOB-CJS)

LINDA G. HOLT, ET AL.                                    PLAINTIFFS

VS.

DENNIS B. GRIFFIN, ET AL.                                DEFENDANTS


MEMORANDUM OPINION AND ORDER


This matter is before the Court on defendants' expedited motion for amended or additional findings, amended judgment, and/or a new trial (Doc. 1059), plaintiffs' responses thereto (Doc. 1109), and defendants' reply (Doc. 1121).

Having reviewed this matter, the Court concludes that oral argument is unnecessary. The Court thus issues the following Memorandum Opinion and Order.

*Analysis*

Defendants' post-trial motion asserts deficiencies in the Court's findings of fact and conclusions of law in three areas: (1) the testimony of plaintiffs' expert witness, John Chilton; (2) the Court's award of prejudgment interest; and (3) the Court's findings related to Father's condition at the time of the execution of the January 29, 1992, affidavit in which he purportedly ratified the 1985-86 sales of Griffin Industries stock. Each will be addressed in turn.

A. **The Testimony of John Chilton**

Defendants argue that Chilton's testimony is "fundamentally flawed" because he failed to account for the fact that Griffin Industries was an S-corporation, meaning that shareholders were taxed on the company's profits. They further assert that Chilton's disgorgement calculation is inflated because he failed to deduct distributions that defendants received that they used to pay taxes.

Defendants put on no evidence to show what portion of the approximately $299 million in distributions to defendants was used to satisfy their tax liabilities. They did not introduce any such evidence in their case-in-chief, and they did not cross-examine Chilton with any figures such that the Court would have an evidentiary basis on which to reduce the award.

Indeed, defendants assert that distributions to Griffin Industries shareholders "in most years" were intended for S-

2

corporation taxes. (Doc. 1059 at 11). "Most" means not all. Thus, defendants implicitly concede that some company distributions were in fact made to defendants unrelated to their tax obligations.[1]

Again, however, the Court has no evidence of what these amounts were. At this point, the Court would have to speculate to make any reduction in this portion of the judgment. The Court will not do so.

Defendants also criticize Chilton's calculations on the grounds that he used "inconsistent" assumptions. Specifically, his figures for the 1985-86 stock transactions used a one-eleventh division of assets, while the calculations pertaining to Martom Properties and Craig Protein used a one-fifth division. However, as Chilton explained at trial, these divisions were based on the estate plans in effect at the time of the transactions in question. (Doc. 821 at 100). This is a rational methodology. Moreover, use of the one-eleventh division as to Holt plaintiffs' claims regarding Griffin Industries stock actually benefits defendants because it gives those sisters a smaller piece of the pie.

This case involved extremely complex financial and accounting issues that called for expert testimony. If defendants found fault

---

[1] Steve Blair's testimony was similarly imprecise. (Doc. 823 at 66) (testifying that distributions were "[a]lmost always" used to cover tax obligations).

3

with Chilton's analysis, they should have called their own expert. They did not do so.

Third, defendants assert that disgorgement is not proper for amounts that went to third parties. The Court has ruled on this issue (Doc. 856 ¶¶ 237-39, 247), and defendants offer no new authority to cause the Court to alter its previous conclusion.

Finally, defendants argue that the judgment should be reduced by the value of the stock that was given to Griffin grandchildren, including plaintiffs' children. Defendants cite no authority to support this argument and, although it has superficial appeal as it relates to plaintiffs' children, the fact remains that defendants' ownership of the stock in question was wrongful *ab initio*, regardless of what they later did with it.

### B. Prejudgment Interest

Defendants next assert that the award of prejudgment interest is improper because the disgorgement award is unliquidated.

As Kentucky courts have observed, "[w]hether damages qualify as liquidated or unliquidated, however, is not always clear." *Ford Contracting, Inc. v. Kentucky Transp. Cabinet*, 429 S.W.3d 397, 414 (Ky. Ct. App. 2014). This Court agrees.

However, the Court need not revisit the question of whether the award herein is liquidated, because even if it is unliquidated, the Court would exercise its discretion to award the prejudgment interest in question.

4

The decision of whether to award prejudgment interest on an unliquidated amount "is a matter of 'equity.'" *Nucor Corp. v. General Elec. Co.*, 812 S.W.2d 136, 143 (Ky. 1991). Before this Court is an extraordinary case, spanning decades, in which defendants repeatedly and flagrantly violated the fiduciary duties they owed to their sisters, who reposed great trust in their brothers.

There can be no question that prejudgment interest results in a large — very large — recovery. But, as plaintiffs point out, this is a function of the passage of many years since the breaches in question, during which time defendants misled their sisters about the propriety of their actions. But for an errant mailing in 2010, plaintiffs perhaps would never have discovered the wrongs done to them by their brothers. It would inequitable *not* to compensate plaintiffs for the loss of use of millions of dollars for much of their adult lives.

C. **Father's Competency**

Defendants' final argument is that the Court improperly found that Father was not competent. Defendants are mistaken.

The Court made no finding regarding Father's competency. Rather, it noted, in a single paragraph, an evaluation by Dr. Parsons which resulted in a document purporting to set forth Father's IQ and mental age. (Doc. 856 ¶ 92). This was introduced by way of background in the context of defendants' attempt to show

5

that plaintiffs were put on actual notice of their claims through their interactions with Bev Storm and Mark Arnzen.

Defendants are correct that there was no medical testimony to explain this document, but it is immaterial because the Court's conclusion that Father did not ratify the prior sales of stock to his sons does not depend on Dr. Parson's evaluation. Even in its absence, the Court would still conclude that, under the totality of the surrounding circumstances, Father did not have the degree of knowledge of the material facts necessary for ratification. This argument is simply a red herring.

### *Summary and Conclusion*

The evidence in this case is so complex that it is easy to lose sight of the big picture. As the Court described in its introduction to its Findings of Fact and Conclusion of Law (Doc. 856), this picture is one of pervasive breaches of fiduciary duties which taint and override the numerous defenses advanced by defendants.

The family was patriarchal. After Father's stroke, the oldest brothers assumed the role of patriarchs. They ignored, however, the fact that such a family leadership role also made them fiduciaries for their sisters. Rather, they managed the family matters for their own benefit rather than as trustees for their sisters. As a result, their conduct fell woefully short of the strict duties imposed on fiduciaries and trustees:

6

> Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.

*Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928).

The Court thus finds no basis in the current motion to alter its findings or conclusions.

Therefore, having reviewed this matter, and being otherwise advised,

**IT IS ORDERED** that defendants' expedited motion for amended or additional findings, amended judgment, and/or a new trial (Doc. 1059) be, and is hereby, **DENIED**.

This 26th day of July, 2016.



Signed By:
*William O. Bertelsman* WOB
United States District Judge